Judgment rendered July 6, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,605-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TIFFANY WINES                                    Plaintiff-Appellant

versus

JAMILA HOLLINGSQUEST AND          Defendants
GEICO CASUALTY COMPANY

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 49,696

Honorable Thomas Wynn Rogers, Judge

* * * * *

LAW OFFICES OF THOMAS B. WAHLDER          Counsel for Appellant
By: Thomas Benjamin Wahlder
    Laurie Simms Wahlder
    Stephen Hecker


DAVENPORT, FILES & KELLY, L.L.P.          Counsel for Appellee,
By: Martin Shane Craighead                Shelter Mutual
                                          Insurance Company


* * * * *

Before STONE, STEPHENS, and MARCOTTE, JJ.

**STEPHENS, J.**

This appeal is from the trial court's judgment granting summary judgment in favor of defendant, Shelter Mutual Insurance Company ("Shelter"), and dismissed all claims of plaintiff, Tiffany Wines ("Tiffany"), against Shelter, with prejudice, at her cost. For the reasons set forth below, we affirm.

## FACTS/PROCEDURAL HISTORY

On May 9, 2020, Tiffany was a guest passenger riding in a vehicle owned and being operated by Markeia Hicks ("Ms. Hicks") when it was struck by a vehicle being negligently operated by defendant, Jamila Hollingsquest ("Ms. Hollingsquest"). Tiffany filed suit against Ms. Hollingsquest and her auto liability insurer, GEICO Casualty Company ("GEICO"), and Ms. Hicks's uninsured/underinsured motorist ("UM") insurer, Shelter.

In its answer, Shelter denied that its policy provided any UM coverage to Tiffany and moved for summary judgment, seeking dismissal of the UM claims asserted by Tiffany. Specifically, Shelter alleged that because Tiffany is not a named insured or an "additional listed insured" under the policy, is not a "relative" of the named insured, and was not "using" the vehicle as defined in the policy, she has no claim for UM coverage under the Shelter policy. According to Shelter, Tiffany was simply a guest passenger in Ms. Hicks's vehicle.

Tiffany filed an opposition to the motion for summary judgment, contending that she was an "individual using the described auto with permission," and therefore is an "insured" under the Shelter policy for purposes of UM coverage. Going further, Tiffany suggested that the Shelter

policy's definition of "use" is unenforceable because it "impermissibly contravenes" the mandates of La. R.S. 22:1295(1)(a)(i) and (ii), *inter alia*.

A hearing on the motion was held on August 16, 2021, and a written ruling was issued by the court on August 20, 2021. The trial court found that *Nielson v. Shelter Mut. Ins. Co.*, 2014-0614 (La. App. 1 Cir. 11/7/14), 167 So. 3d 697, *writ denied*, 2014-2564 (La. 3/13/15), 160 So. 3d 964, cited by Shelter in its memorandum in support of summary judgment, was directly on point and granted the insurer's motion for summary judgment. A written judgment in accordance therewith was signed by the trial court on September 1, 2021, granting Shelter's motion for summary judgment and dismissing with prejudice, at plaintiff's cost, her claims against the insurer. It is from this judgment[1] that plaintiff, Tiffany Wines, has appealed.

## DISCUSSION

Tiffany's sole assignment of error is that the trial court erred in granting summary judgment in favor of Shelter, the defendant insurer, and dismissing her claims. Tiffany urges that this ruling is an error of law based upon a misstatement of law set forth in *Nielson, supra*, wherein the appellate court upheld and enforced an identical policy definition of "use" to exclude and dismiss the UM claims of an injured guest passenger without observing the statutory mandates of Louisiana's UM law.

In response, Shelter denies that its policy provides UM coverage for Tiffany Wines under the facts of this case. In *Nielson*, *supra*, the First Circuit found that Shelter's auto policy does not extend UM coverage to a

---

[1] On August 25, 2021, a revised ruling was issued by the trial court; this revision was identical to the original ruling, the exception being the assessment of costs associated with the motion to plaintiff, Tiffany Wines.

2

guest passenger who does not qualify as an "insured" under the policy. *Nielson* dealt with the same factual scenario and the same Shelter policy language, and interpreted the policy language as precluding UM coverage for these reasons:

- While there is strong public policy in favor of UM insurance coverage in Louisiana, an insured is free to reject or limit UM coverage in order to reduce premiums;

- The Shelter policy clearly limits who is covered for UM purposes; and

- The policy should be enforced as written, as such limitations are permissible under Louisiana's UM law.

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Entertainment, Inc. v. First Guaranty Bank,* 2021-00838 (La. 3/25/22), ___ So. 3d ___, 2022 WL 883911; *Elliott v. Continental Cas. Co.*, 2006-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Properties, Ltd.*, 1993-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979. A motion for summary judgment will be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

Where the facts are undisputed and the matter presents a purely legal question, summary judgment is appropriate. *Higgins v. v. Louisiana Farm Bureau Cas. Ins. Co.*, 2020-01094 (La. 3/24/21), 315 So. 3d 838. Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. *Bernard v. Ellis*, 2011-2377 (La. 7/2/12) 111 So. 3d 995, 1002.

3

An insurance policy is a contract that constitutes the law between the insurer and the insured. La. C.C. art. 1983; *Doucet v. Darwin Select Ins. Co.*, 2016-1989 (La. 2/3/17), 210 So. 3d 794; *Peterson v. Schimek*, 1998-1712 (La. 3/2/99), 729 So. 2d 1024. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. C.C. art. 2045; *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577.

Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the  obligations they contractually assume. *Landry v. Progressive Security Ins. Co.*, 2021-00621 (La. 1/28/22), ___ So. 3d ___, 2022 WL 263003. The purpose of liability insurance is to afford the insured protection from damage claims. *Peterson*, *supra*; *Ledbetter v. Concord General Corp.*, 1995-0809 (La.1/6/96), 665 So. 2d 1166.

The extent of coverage is determined from the intent of the parties as reflected by the words of the insurance policy. *Ledbetter*, *supra*. Exclusions in an insurance policy that conflict with statutes or public policy will not be enforced. *Landry*, *supra*; *Marcus v. Hanover Ins. Co.*, 1998-2040 (La. 6/4/99), 740 So. 2d 603. The Court's search for public policy governing automobile insurance policies must begin with the statutes enacted by the Legislature. *Landry*, *supra*; *Sensebe v. Canal Indem. Co.*, 2010-0703 (La. 1/28/11), 58 So. 3d 441.

When the existence of UM coverage under a policy of insurance is at issue, a two-step analysis is required. First, the automobile insurance policy is examined to determine whether UM coverage is contractually provided under the express provisions of the policy. Next, if no UM coverage is

4

found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated. *Higgins*, 315 So. 3d at 441-42; *Green ex rel. Peterson v. Johnson*, 2014- 0292 (La. 10/15/14), 149 So. 3d 766, 773-74; *Filipski v. Imperial Fire & Cas. Ins. Co.*, 2009-1013 (La. 12/1/09), 25 So. 3d 742; *Cadwallader, supra*; *Succession of Fannaly v. Lafayette Ins. Co.*, 2001-1355 (La. 1/15/02), 805 So. 2d 1134; *Magnon v. Collins*, 1998-2822 (La. 7/7/99), 739 So. 2d 191; *Davis, supra*.

We therefore look first at the UM coverage expressly provided in Markeia Hicks's Shelter policy to determine whether contractual UM coverage existed for Tiffany's injuries in the present case. *See, Green ex rel. Peterson*, 149 So. 3d at 774.

- The insurance policy issued by Shelter to Ms. Hicks provided auto liability and UM coverages in the amount of $50,000 each person/$100,000 each accident.

- UM coverage in an amount equal to the bodily injury liability limits was provided for in the Shelter policy.

- The Shelter policy specifically described as a "covered vehicle" the 2020 Kia Forte FR 4DR operated by Ms. Hicks and occupied by Tiffany as a passenger at the time of the accident.

- In addition to the named insured, Markeia Hicks, the Shelter policy also provided liability and UM coverage to ***individuals using the covered vehicle with permission***.

- The Shelter policy has an omnibus insured clause providing liability coverage to ***permissive users***. The omnibus clause provides:
  - ***Individuals who have permission or general consent to use the described auto are insureds for claims resulting from that use***.

- The Shelter policy also provided UM coverage ***to any individual permissively using*** the described vehicle.
  - Part IV-Coverage E-Uninsured Motor Vehicle Liability Coverage contains "Additional Definitions Used in Coverage E," which include:
  - (1) Damages means money owed to an insured for bodily injuries, sickness or disease, sustained by that insured and caused by an accident arising out of the ownership or use of a motor vehicle.

5

- - (2) Insured means:
    - (a) You;
    - (b) Relatives;
    - (c) Individuals listed in the Declarations as an "additional listed insured" who do not own a motor vehicle, and whose spouse does not own a motor vehicle; and
    - (d) Any individual *__using__* the described auto *__with permission__*. (Emphasis added.)

- The Shelter policy contains the following definitions:
  - (30) *Operator means an individual who is using* a vehicle.
  - (33) *Passenger means an individual who is __occupying__* one of the seats of a vehicle *__with permission__ but does not include the operator* of a vehicle.
  - (42) *Relative* means an individual related to you by blood, marriage, or adoption who is a resident of your household. It includes your child who is away at school, if that child is both unmarried and unemancipated. Relative also includes any foster children in your legal custody for more than 90 consecutive days immediately before the occurrence. An individual who owns a motor vehicle or whose husband or wife owns a motor vehicle, is excluded from the definition of relative.
  - (52)(2)(b)(iii) Uninsured motor vehicle means a motor vehicle being used by a person liable for damages because of that use; if that owner or operator is covered by a policy of liability insurance applicable to the accident but the monetary limits of that policy are less than the full amount owed by its owner or operator for the insured's damages.
  - (54) *Use means physically controlling, or attempting to physically control, the movements of a vehicle*. It includes any emergency repairs performed in the course of a trip, if those repairs are necessary to the continued use of the vehicle.

As set forth in Shelter's insurance policy, damages means "money owed to an insured…" As noted by the First Circuit in *Nielson*, *supra* at 701-02, per its policy's plain language, Shelter owes underinsured/uninsured motorist damages only to individuals who are an "insured" for purposes of UM coverage. The policy clearly defines an insured for UM coverage as: (1) "you" (defined as the named insured); (2) relatives (as defined in the policy); (3) persons listed in the declarations as an "additional listed insured"

6

who do not own a motor vehicle and whose spouse does not own a motor vehicle; and (4) an individual "using" the described auto with permission.

Tiffany is not the named insured—Markeia Hicks is the sole named insured. Next, there is no evidence that Tiffany is an individual related to Ms. Hicks by blood, marriage, or adoption and a resident of her household; therefore, Tiffany is not a "relative" of the named insured, Markeia Hicks. Third, Tiffany is not listed as an additional insured on the Shelter policy. Finally, Tiffany was not "using" the described auto with permission; as a guest passenger, Tiffany, *while in the vehicle with permission*, was merely an *occupant*, *not a user*, as defined by the clear language of the Shelter policy. As noted above, *to be considered "using" the described auto, Tiffany would have to have been a permitted operator, not a passenger, and would have been, at the time of the accident, "physically controlling, or attempting to physically control, the movements" of the described vehicle*.

Since Tiffany does not qualify for UM coverage under the contractual provisions of the Shelter policy, we turn to the second step of the analysis set forth in *Green ex rel. Peterson, supra*, which is application of the UM statute, La. R.S. 22:1295, to determine whether statutory coverage is mandated.

Louisiana Revised Statute 22:1295 provides in part:

The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, ***for the protection***

7

> *of persons insured thereunder* who are legally entitled to
> recover nonpunitive damages from owners or operators of
> uninsured or underinsured motor vehicles because of bodily
> injury, sickness, or disease, including death resulting
> therefrom… (Emphasis added.)

By its express language, La. R.S. 22:1295 does not require UM coverage for passengers; what it does require is that automobile liability policies shall include UM coverage "for the protection of persons insured thereunder." "Although Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy." *Magnon*, 739 So. 2d at 196; *Taylor v. Rowell*, 1998-2865 (La. 5/18/99), 736 So. 2d 812; *Howell v. Balboa Ins. Co.*, 564 So. 2d 298 (La. 1990); *Seaton v. Kelly*, 339 So. 2d 731 (La. 1976). Therefore, if a person is not an insured under a liability policy, then there is no requirement that UM coverage be provided to them, regardless of whether they are a passenger. *Magnon, supra*.

Regarding the liability portion of Shelter's insurance policy issued to Markeia Hicks:

- As to liability coverage for bodily injury and property damage coverage, Shelter agrees to pay damages on behalf of an insured….

- In Coverage A (Bodily Injury) and Coverage B (Property Damage):

  - (1) *Damages* means money, including pre-judgment interest, an insured is legally obligated to pay another person because of bodily injury, property damage, or consequential loss, arising out of an accident caused by that insured's ownership, maintenance, or use of the described auto or a non-owned auto.

  - (2) *Insured* means a person included in one of the following categories, but only to the extent stated for that category.
    - Category 1: You are an insured for claims resulting from your ownership, maintenance, or use of the described auto; and your use of non-owned autos.

8

- Category 2:
    - (a) Relatives; and
    - (b) Individuals listed in the Declarations as an "additional listed insured" who do not own a motor vehicle, and whose spouse does not own a motor vehicle; are insureds for claims resulting from their use of the described auto and their use of non-owned autos.

- Category 3:
    - (a) Individuals who would meet the definition of relative except for the fact that they own a motor vehicle, or their spouse owns a motor vehicle; and
    - (b) Individuals listed in the Declarations as an "additional listed insured" who own a motor vehicle, or whose spouse owns a motor vehicle; are insureds for claims resulting from their use of the described auto.

- Category 4:
    - Individuals who have permission or general consent to use the described auto are insureds for claims resulting from that use.

To determine whether UM coverage is mandated by La. R.S. 22:1295 in this case, as the UM statute has been interpreted by our supreme court, the question to be answered is whether Tiffany qualifies as an insured under one of the above four categories of insureds.

Tiffany is not a named insured, and there is no evidence that she was related to Ms. Hicks by blood, marriage, or adoption, or that she "resided" in Ms. Hicks's household to be within the policy's definition of relative. Likewise, Tiffany is not included as an "additional listed insured" under the terms of the Shelter policy. Finally, Tiffany's claims do not result from her "use" of the described auto as defined by the policy. Therefore, Tiffany Wines is not within the four specific categories of insureds for liability coverage under the Shelter auto policy issued to Ms. Hicks. Because Tiffany is not a liability insured under the Shelter policy, La. R.S. 22:1295 does not require UM coverage for her.

9

In finding that the identical Shelter policy language was neither contrary to public policy nor in conflict with statutory provisions mandating UM coverage in Louisiana, the First Circuit in *Nielson* wrote the following:

> Nielson relies on the recent Louisiana Supreme Court case, *Bernard v. Ellis*, 2011-2377 (La. 7/2/12), 111 So. 3d 995, 1003. In *Bernard*, the Supreme Court evaluated whether there was UM coverage for a guest policy under a policy issued by Imperial Fire and Casualty Insurance Company, specifically recognizing that Imperial's policy did not define the term "use," which necessitated the Court to look to jurisprudence and interpret the ambiguous term broadly to include riding as a passenger. It is important to note the factual distinction between *Bernard* and the case before us, since we are dealing with an insurance policy that specifically defines the term "use" to not include a passenger. We further note that the Supreme Court did not hold that Louisiana law prohibits an insurance company from excluding a guest passenger from UM coverage. Rather, it simply held that under the ambiguously undefined policy language at issue in *Bernard*, a passenger would be included as an insured for UM purposes. *Id.* at 1005. Shelter's policy, on the other hand, very clearly defines "use" in such a way that a guest passenger is not an insured for purposes of liability or UM coverage. Thus, we find that *Bernard* is not controlling of the facts in this case.
>
> While there is strong public policy in favor of UM insurance coverage in Louisiana, an insured is free to reject or limit UM coverage in order to reduce premiums. The Shelter policy clearly limits who is covered for UM purposes, and the policy should be enforced as written. (footnote omitted).

*Nielson*, 167 So. 3d at 701-02. We agree with the First Circuit, and find no reason to decide otherwise in the case before us.

While Tiffany has also made statutory and public policy arguments in support of her claim that the Shelter insurance policy provides UM coverage for her as a passenger, we summarily reject them as unfounded. Until and unless the Louisiana Legislature sees fit to amend the UM statute, we will not usurp its function by doing so as a court. *Landry, supra*, 2021-00621 at **11-12. As stated by the supreme court in *Taylor,* 736 So. 2d at 818, citing *Hearty v. Harris,* 574 So. 2d 1234, 1242 (La. 1991), "while 'automobile

10

liability policies' are issued primarily for the protection of the public rather than the insured, it is not the public policy of this state to protect and provide compensation to injured persons at all times."

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed.  Costs are assessed against plaintiff, Tiffany Wines.

**AFFIRMED**.